UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| TODD DiPIERO, | ) | No. 15 B 5807 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| LAUREN I. PAUSCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 A 337 |
| | ) | |
| TODD DiPIERO, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Lauren Pausch alleges in this adversary proceeding that chapter 7 debtor Todd DiPiero sexually assaulted her, she obtained a $2.5 million judgment against him in Wisconsin state court, and his debt to her is non-dischargeable under section 523(a)(6) of the Bankruptcy Code, 11 U.S.C. § 523(a)(6). In his answer, DiPiero neither admitted nor denied that Pausch's adversary proceeding is a core proceeding. He also asserted as affirmative defenses that the bankruptcy court lacked subject matter jurisdiction because the adversary proceeding is a "personal injury tort" claim under 28 U.S.C. § 157(b)(5), and the Wisconsin state court violated several of his federal constitutional rights. At the end of his answer, he demanded a jury trial.

Pausch has moved to strike the answer, these affirmative defenses, and the jury demand. For the reasons that follow, Pausch's motion will be granted in part and denied in part.

### 1. Jurisdiction

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). As explained below, this is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I); *Wilson v. Walker (In re Walker)*, 515 B.R. 725, 740 (Bankr. W.D. Mo. 2014).

### 2. Facts

The facts are taken from the complaint, the answer, the docket in this adversary proceeding (cited as "Adv. Dkt."), and the docket of the Circuit Court of Milwaukee County, Wisconsin in *Pausch v. Cormier, et al.*, No. 2008CV017208 (cited as "Wis. Dkt.").[1/]

Those facts are disturbing to say the least. In June 2007, Pausch alleges, DiPiero and two other men drugged her and took her to a hotel. (Compl. ¶ 4). There, they physically and sexually assaulted her repeatedly. (*Id.*). Not only did they gang-rape her, but they videotaped the "hours-long rape" and made a DVD of it. (*Id.* ¶ 29). They also used Pausch's own cell phone to take pictures during the ordeal, sending a picture of her face with a penis in her mouth to everyone on her cell phone's contact list. (*Id.*).

In 2008, Pausch brought an action for damages in Wisconsin state court against DiPiero and his accomplices. (*Id.* ¶ 6). When DiPiero failed to answer or appear, Pausch moved for a default judgment. (*Id.* ¶ 7). On the date her motion was to be heard, DiPiero and the others appeared without an attorney and asked for time to retain one. (*Id.* ¶ 8). The court granted their request. (*Id.* ¶ 9). At the next hearing, however, only DiPiero appeared, no lawyer in tow. (*Id.* ¶

---

[1/]   The court can take judicial notice of its own docket as well as the dockets of other courts in related matters. *In re Meltzer*, 516 B.R. 504, 506 n.2 (Bankr. N.D. Ill. 2014).

10). The court therefore granted Pausch's motion for default judgment and set the matter for a prove-up of damages. (*Id.* ¶ 11). DiPiero and his co-defendants then retained lawyers and moved for relief from the judgment. (*Id.* ¶ 13). But the court denied the motion and proceeded to conduct the prove-up (*id.* ¶¶ 14-15), awarding Pausch $1 million in compensatory damages "joint and several as to all three defendants" and $500,000 in punitive damages "per defendant" (Wis. Dkt. No. 21).

DiPiero and the other defendants appealed. The Wisconsin Court of Appeals affirmed the judgment in part, finding the circuit court had not abused its discretion in refusing to vacate the default judgment and had properly awarded both compensatory and punitive damages. *See Pausch v. Cormier*, No. 2010AP2329, 2011 WL 3055347, at *2-5 (Wis. Ct. App. July 26, 2011). Because the court of appeals was uncertain whether the punitive damages award was joint and several, the matter was remanded to the circuit court for clarification. *Id.* at *5. DiPiero and the others could have petitioned for further review in the Wisconsin Supreme Court. *See* Wis. Stat. Ann. §§ 808.10(1), 809.62; *see, e.g., In re Marriage of Hommel*, 162 Wis. 2d 782, 471 N.W.2d 1 (1991). They did not. (*See* Wis. Dkt. Nos. 31-46 (reflecting activity on remand immediately after the decision on appeal)).

On remand, the circuit court clarified that the defendants were jointly and severally liable for $1,000,000 in compensatory damages, $1,500,000 in punitive damages, and $30,847.59 in fees. (Wis. Dkt. No. 37). On April 17, 2012, separate judgments were against each defendant. (*Id.* Nos. 41-46). Judgment was entered against DiPiero for $2,531,630.49. (*Id.* No. 42). Neither DiPiero nor any of his co-defendants appealed. (*See generally* Wis. Dkt. (reflecting no entries after the judgments)).

In February 2015, DiPiero filed a chapter 7 bankruptcy case in this district. Pausch then

commenced this adversary proceeding. Her complaint has a single count alleging that DiPiero's debt to her is non-dischargeable under section 523(a)(6) because it arises from a willful and malicious injury.

DiPiero answered, demanding a trial by jury.[2] In his answer, DiPiero neither admitted nor denied Pausch's allegation that her adversary proceeding was a core matter, stating only "that 28 U.S.C. § 157(b)(2) describes core proceedings as the allowance or disallowance of claims or determinations as to their dischargeability." (Answer ¶ 2).

DiPiero also asserted five affirmative defenses.[3] The first contests subject matter jurisdiction because 28 U.S.C. § 157(b)(5) requires Pausch's claim to be tried in the district court rather than the bankruptcy court. (Answer ¶¶ 34-36). The second is that the complaint fails to state a claim on which relief can be granted. (*Id.* ¶ 37). The third defense is not entirely clear, but DiPiero appears to suggest that only the Wisconsin court's punitive damages award, not the award of compensatory damages, is potentially non-dischargeable under section 523(a)(6). (*Id.* ¶¶ 38-41). The fourth asserts that the Wisconsin court violated both DiPiero's Fourteenth Amendment right to due process and his Seventh Amendment right to a jury trial when the court entered a default judgment against him. (*Id.* ¶¶ 42-43). The fifth asserts that the Wisconsin court violated DiPiero's Fourteenth Amendment right to equal protection because the court was

---

[2]     The answer at issue here is technically DiPiero's second amended answer. The initial answer (Adv. Dkt. No. 29) was stricken because its form violated the local bankruptcy court rules (*see id.* No. 32). DiPiero then filed an answer that contained an improper general denial (*id.* No. 33), so he moved for and received leave to amend his answer again (*id.* Nos. 35, 40). The current answer is the result. (*See id.* No. 41).

[3]     DiPiero did not number or otherwise separate his affirmative defenses. He simply headed a section of his answer "affirmative defenses" and then made two pages of allegations in numbered paragraphs. Necessarily, then, it is something of an interpretation to declare that DiPiero has alleged five (as opposed to, say, four or six) defenses.

prejudiced against DiPiero, an Illinois resident. (*Id.* ¶ 44).

Pausch has moved to strike the answer as a whole on the ground that DiPiero's equivocal response to her allegation that this is a core proceeding fails to comply with Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 7012(b). Presumably in the alternative, she has moved to strike his first, fourth, and fifth affirmative defenses because they are insufficient as a matter of law, and she has moved to strike his jury demand because he has no right to a jury trial in this proceeding.

### 3. Discussion

Pausch's motion will be granted in part and denied in part. As to her request to strike the answer as a whole, the motion will be denied. Although Pausch is correct that DiPiero has not complied with Rule 7012(b), it is simple enough to determine whether this is a core proceeding. It is. The balance of her motion, however, will be granted. The three affirmative defenses are indeed insufficient as a matter of law, and DiPiero has no right to a jury trial in a proceeding to determine the dischargeability of a debt.

#### a. The Answer

The answer itself will not be stricken. Pausch is right that Rule 7012(b) says a responsive pleading must "admit or deny an allegation that the proceeding is core or non-core." *See* Fed. R. Bankr. P. 7012(b). She is right that Rule 7012(b) requires a party who says the proceeding is non-core must indicate whether he "does or does not consent to entry of final orders or judgments by the bankruptcy judge." *See id.* And she is right that DiPiero has not complied with Rule 7012(b), since he has neither admitted nor denied her allegation but has simply acknowledged what section 157(b)(2) says about non-dischargeability proceedings. That is not enough. The

-5-

rule calls for a party to state "its position on the matter," not simply paraphrase the statute. *Handy & Harman Ref. Grp., Inc. v. Handy & Harman, Inc. (In re Handy & Harman Ref. Grp., Inc.)*, 287 B.R. 598, 602 (Bankr. D. Conn. 2003).

At this point, though, DiPiero has not been ordered to comply with Rule 7012(b). And although his compliance could be compelled, *see, e.g., Official Comm. of Unsecured Creditors v. Conseco Fin. Serv., Corp. (In re Lois/USA, Inc.)*, Nos. 99 B 45910 (REG), 99 B 11026, 99 B 11025, 00-2350, 2002 WL 31098548, at *1 (Bankr. S.D.N.Y. Sept. 10, 2002), and his answer stricken if he continued not to comply, there is an easier way. No matter what the parties do, section 157(b)(3) requires a bankruptcy court to determine whether a proceeding is core. *See* 28 U.S.C. § 157(b)(3). When parties fail to obey Rule 7012(b), courts sometimes proceed to make the determination themselves. *See, e.g., Creditors' Comm. v. Fredericks (In re Gaslight Club, Inc.)*, 167 B.R. 507, 510 n.1 (Bankr. N.D. Ill. 1994). Rather than force the issue, the better course is to decide it now – because the decision is a simple one.

Pausch's non-dischargeability claim is plainly a core proceeding. That is obviously true under the statute. As even DiPiero seems to admit, section 157(b)(2)(I) expressly defines core proceedings to include "determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(I). But the statute alone does not determine the matter. In *Stern v. Marshall*, 564 U.S. 462 (2011), the Court explained that a bankruptcy court's power to enter a final judgment must also be consistent with Article III of the Constitution. *Id.* at 482. (Or as some courts put it, the proceeding must be "constitutionally core" as well as statutorily so. *See, e.g., Sher v. JPMorgan Chase Funding, Inc. (In re TMST, Inc.)*, Nos. 09–17787 (NVA), 11–00340 (NVA), 2015 WL 4080077, at *4 (D. Md. July 6, 2015).)

Pausch's adversary proceeding is constitutionally core as well. The constitutional

question, *Stern* held, is whether the proceeding "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 564 U.S. at 499; *see also Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, 665 F.3d 906, 914 (7th Cir. 2011); *In re Settlers' Hous. Serv., Inc.*, 505 B.R. 483, 495 (Bankr. N.D. Ill. 2014). Pausch's claim stems from the bankruptcy case itself: her claim is that DiPiero's debt is non-dischargeable in bankruptcy. But for the bankruptcy – and section 523(a) of the Bankruptcy Code – she would have no claim. *See Dragisic v. Boricich (In re Boricich)*, 464 B.R. 335, 337 (Bankr. N.D. Ill. 2011). It "goes almost without saying," consequently, that non-dischargeability claims are "constitutionally core." *Walker*, 515 B.R. at 740; *see also Deitz v. Ford (In re Deitz)*, 469 B.R. 11, 20 ( B.A.P. 9th Cir. 2012) (noting that "[d]etermining the scope of the debtor's discharge is a fundamental part of the bankruptcy process" and so is core (internal quotation omitted)), *aff'd* 760 F.3d 1038 (9th Cir. 2014); *Muhammad v. Reed (In re Reed)*, 542 B.R. 808, 815 (Bankr. N.D. Ill. 2015).

Unquestionably, then, this is a core proceeding in which the bankruptcy court is empowered to enter a final judgment. With the determination under section 157(b)(3) made, DiPiero's answer need not be stricken for failing to respond as Rule 7012(b) required.

### b. Affirmative Defenses

The three challenged affirmative defenses, on the other hand, will be stricken. As Pausch correctly argues, each is insufficient as a matter of law.

Rule 12(f) allows the court to "strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f) (made applicable by Fed. R. Bankr. P. 7012(b)). Motions to strike are sparingly used, *Kmart Corp. v. Uniden Am. Corp. (In re Kmart Corp.)*, 318 B.R. 409, 413 (Bankr. N.D. Ill. 2004), and are disfavored, *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991),

because they often serve only to delay, *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Motions to strike can be useful, though, as a way to "remove unnecessary clutter from the case." *Id.* When they do, "they serve to expedite, not delay." *Id.*; *see also Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 904 (N.D. Ill. 2006).

In this district, courts assess the sufficiency of an affirmative defense in three steps. *Bryson v. Benchmark Mgmt. Corp.*, No. 14 C 7998, 2015 WL 1188524, at *2 (Mar. 12, 2015); *LaSalle Bank Nat'l Ass'n v. Paramont Props.*, 588 F. Supp. 2d 840, 860 (N.D. Ill. 2008); *Reis Robotics*, 462 F. Supp. 2d at 905. The first step is to determine whether the matter is appropriately pled as an affirmative defense. *Reis Robotics*, 462 F. Supp. 2d at 905. The second is to determine whether the defense is adequately pled under Rules 8 and 9. *Id.* The third is to determine whether the defense is sufficient under the standard in Rule 12(b)(6). *Id.* Affirmative defenses are stricken "only when they are insufficient on the face of the pleading." *Heller*, 883 F.2d at 1294.

In this case, DiPiero's first defense is insufficient under the Rule 12(b)(6) standard, and the fourth and fifth defenses are not only insufficient under Rule 12(b)(6) but are also not appropriately pled as affirmative defenses.

### i. The First Defense

As his first defense, DiPiero contends the court lacks subject matter jurisdiction. That is so, he reasons, because Pausch's claim is a "personal injury tort" claim, and under 28 U.S.C. § 157(b)(5) such a claim must be "tried in the district court in which the bankruptcy case is pending." 28 U.S.C. § 157(b)(5). Because the trial must be conducted in the district court, DiPiero says, the bankruptcy court lacks jurisdiction to hear the claim.

This defense is insufficient for several reasons. First, section 157(b)(5) is not a jurisdictional statute. *See Stern*, 564 U.S. at 479 (noting that section 157(b)(5) "is not jurisdictional"). The grant of bankruptcy jurisdiction appears instead in section 1334 of title 28. Section 1334(a) confers on the district court original and exclusive jurisdiction over all bankruptcy cases. 28 U.S.C. § 1334(a). Section 1334(b), in turn, confers on the district court non-exclusive jurisdiction over proceedings "arising under title 11" as well as proceedings "arising in" or "related to" cases under title 11. 28 U.S.C. § 1334(b). Under section 157(a), district courts may refer those proceedings to the bankruptcy court. 28 U.S.C. § 157(a).

There is jurisdiction over this proceeding because it is one "arising under" title 11. A proceeding "arises under" the Code if the claim in the proceeding is "created or determined by a statutory provision of title 11." *Nelson v. Welch (In re Repository Techs., Inc.)*, 601 F.3d 710, 719 (7th Cir. 2010); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987). Again, Pausch's claim is a non-dischargeability claim under section 523(a)(6) of the Code, 11 U.S.C. § 523(a)(6). A provision of title 11 both creates and determines her claim. The claim is therefore one "arising under" title 11. *Brisco v. United States (In re Brisco)*, 486 B.R. 422, 425 (Bankr. N.D. Ill. 2013) (holding that a section 523(a) claim is one "arising under" title 11); *Vozella v. Basel-Johnson (In re Basel-Johnson)*, 366 B.R. 831, 836 (Bankr. N.D. Ill. 2007). Subject matter jurisdiction here is secure.

DiPiero's mistake comes from thinking of the district and bankruptcy courts as separate. Technically, there is no "bankruptcy court" in the sense of an independent legal entity. *Andros v. Soddy (In re Andros)*, Nos. 99-34989-7, 00-3028-7, 2000 WL 33950023, at *2 (Bankr. W.D. Wis. Dec. 14, 2000). The bankruptcy court is a "unit of the district court," 28 U.S.C. § 151, and in referred matters exercises the district court's jurisdiction. *See generally Executive Benefits*

*Ins. Agency v. Arkison*, ___ U.S. ___, 134 S. Ct. 2165, 2171 (2014). Section 157 simply "allocates the authority to enter final judgment between the bankruptcy court and the district court," and section 157(b)(5) "specifies where a particular category of cases should be tried." *Stern*, 564 U.S. at 480; *see also Adelson v. Smith (In re Smith)*, 389 B.R. 902, 912-13 (D. Nev. 2008) (observing that section 157(b)(5) merely "allocate[s] the jurisdiction already conferred upon federal courts"); 1 *Collier on Bankruptcy* ¶ 3.06[3] at 3-80 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016) (describing section 157(b)(5) as a "venue" provision).

Jurisdiction aside, DiPiero is also mistaken in contending that under section 157(b)(5) Pausch's claim must be tried in the district court. Even when a debt clearly arises from a personal injury claim,[4/] the bankruptcy court can determine the debt's dischargeability under section 523(a)(6). *Defeo v. Cramer (In re Cramer)*, No. 11-1211 (MLC), 2011 WL 2112518, at *2 (D.N.J. May 26, 2011); *Johnson v. Weihart (In re Weihart)*, 489 B.R. 558, 564 (Bankr. W.D. Wis. 2013); *Hermosilla v. Hermosilla (In re Hermosilla)*, 430 B.R. 13, 15 n.1 (Bankr. D. Mass. 2010); *Tidwell v. Smith (In re Smith)*, 379 B.R. 315, 330 (Bankr. N.D. Ill. 2007) (noting that most courts addressing the dischargeability of debts arising from personal injuries will hear "enough evidence to prove a 'debt' was the result of a 'willful and malicious' injury"); *Goldschmidt v. Erickson (In re Erickson)*, 330 B.R. 346, 349 (Bankr. D. Conn. 2005); *Schachter v. Fall (In re Fall)*, 192 B.R. 16, 18 (Bankr. D.N.H. 1995); *Swarcheck v. Manidis (In re Manidis)*, Nos. 92-17643, 93-0181, 1994 WL 250072, at *6 (Bankr. E.D. Pa. May 27, 1994) (deciding the

---

[4/]   Whether it does is not always clear. Neither the Bankruptcy Code nor title 28 defines a "personal injury tort" claim, *see Collier on Bankruptcy, supra*, ¶ 3.06 at 3-77 (observing that "[it] is not at all clear what constitutes a 'personal injury tort' claim"), and courts have reached differing interpretations, *see In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 160-61 (Bankr. D. Conn. 2002) (describing the approaches courts have taken).

dischargeability of a claim based on sexual assault and false imprisonment).

What a bankruptcy court cannot do, absent the parties' consent, is liquidate the claim. *See Cramer*, 2011 WL 2112518, at *2 (noting that the bankruptcy court can "adjudicate dischargeability once the claims have been liquidated"); *Weihart*, 489 B.R. at 564 (declaring that a bankruptcy court has no power to "liquidate personal injury and wrongful death claims"); *Hermosilla*, 430 B.R. at 15 n.1 (stating that the court could not "liquidate Cristina's unliquidated personal injury claim"); *Tidwell*, 279 B.R. at 330. But Pausch is not asking to have her claim liquidated. The Wisconsin state court has already liquidated it, entering a judgment and awarding Pausch damages. That judgment is final and not subject to further review. With the debt liquidated, nothing stands in the way of a determination – in the bankruptcy court – of its dischargeability. *Erickson*, 330 B.R. at 349 (noting that the bankruptcy court "has exclusive jurisdiction to adjudicate [the claim's] dischargeability once such claim is liquidated").

Because section 157(b)(5) is not jurisdictional, and because it does not apply here in any event, DiPiero's first defense will be stricken.[5]

### ii. The Fourth and Fifth Defenses

DiPiero's fourth and fifth defenses – that the Wisconsin state court violated his federal due process and equal protection rights as well as his right to trial by jury – will also be stricken. These are not appropriately pled as affirmative defenses under Rule 8. Even if they were, the *Rooker-Feldman* doctrine would bar their consideration.

---

[5] If DiPiero really believed Pausch's adversary proceeding involved a personal injury tort claim that had to be tried in the district court, he could have moved to have the district withdraw the reference. *See* Fed. R. Bankr. P. 5011. Although the adversary proceeding has been pending for more than a year, DiPiero has never sought to have the reference withdrawn.

Rule 8(c)(1) declares that in response to a pleading, a party "must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1) (made applicable by Fed. R. Bankr. P. 7008). An "affirmative defense" essentially takes the form of the old common law plea in confession and avoidance. *Gwin v. Curry*, 161 F.R.D. 70, 71 (N.D. Ill. 1995). It "assumes the plaintiff can prove its factual allegations" and then "raises additional facts or legal arguments that defeat liability nonetheless." *E.E.O.C. v. Mach Mining, LLC*, 738 F.3d 171, 184 (7th Cir. 2013), *vacated on other grounds*, ___ U.S. ___, 135 S. Ct. 1645 (2015); *accord Sloan Valve Co. v. Zurn Indus., Inc.*, 712 F. Supp. 2d 743, 756 (N.D. Ill. 2010); *Reis Robotics*, 462 F. Supp. 2d at 906.

DiPiero's assertions that the Wisconsin state court violated his constitutional rights are not affirmative defenses to Pausch's claim. Her claim is that DiPiero and two other men sexually assaulted her, and the debt DiPiero owes her as a consequence cannot be discharged in his chapter 7 bankruptcy case. As it happens, Pausch did sue DiPiero for the assault, obtaining a judgment against him. But the basis of her claim against him here is the assault and resulting debt, not the judgment. Assuming the Wisconsin proceedings were constitutionally defective and the judgment consequently invalid, its invalidity would not "defeat liability" for the underlying assault or "defeat" Pausch's claim that the debt flowing from it cannot be discharged. *Mach Mining*, 738 F.3d at 184. Because it would not, the constitutional violations he alleges are not proper defenses under Rule 8.

Even if they were proper defenses, the *Rooker-Feldman* doctrine would deprive the court of jurisdiction to address them. The *Rooker-Feldman* doctrine takes its name from two Supreme Court decisions, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). These decisions "hold that the Supreme Court of the United States is the only federal court that may review judgments entered by state

courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). The doctrine thus prevents "state-court losers" from "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Indus. Corp.*, 544 U.S. 280, 284 (2005).

DiPiero's defenses are precisely the sort of collateral attack on a state court's decision that *Rooker-Feldman* precludes. *Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 818 (7th Cir. 2010) (noting that under *Rooker-Feldman* federal district judges "may not entertain collateral attacks on state judges' decisions"). DiPiero was the "loser" in the Wisconsin state court, *Exxon*, 544 U.S. at 284: judgment was entered against him and damages awarded. Although he appealed to the Wisconsin Court of Appeals, he sought no further review in the Wisconsin Supreme Court (or in the U.S. Supreme Court), nor did he appeal again after the judgment was clarified on remand. Now, years later, DiPiero wants to challenge the validity of the Wisconsin judgment in defense of Pausch's adversary proceeding, inviting the judgment's "review and rejection" here. *Id.* That challenge is beyond this court's power to entertain.

Nor does it make a difference that DiPiero is challenging the judgment on federal constitutional grounds. *Rooker-Feldman* "'precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . no matter how erroneous or unconstitutional the state court judgment may be.'" *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008) (quoting *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002)); *see also Commonwealth Plaza Condo. Ass'n v. City of Chicago*, 693 F.3d 743, 748 (7th Cir. 2012); *Mehta v. Attorney Registration & Disciplinary Comm'n*, 681 F.3d 885, 887 (7th Cir. 2012); *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001) (*Rooker-Feldman* bars review "even

where the challenge to the state court decision involves federal constitutional issues."). *Feldman* itself held barred a claim that a decision of the District of Columbia Court of Appeals had violated both equal protection and due process. *See Feldman*, 460 U.S. at 469 n.3.

DiPiero's constitutional attacks on the validity of the Wisconsin court's judgment should have been raised in the Wisconsin Court of Appeals. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Centres Inc. v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998) ("Litigants who believe that a state judicial proceeding has violated their constitutional rights must appeal that decision through their state courts and then to the Supreme Court."). They were not. No federal court, the Supreme Court included, can consider them now. *See Feldman*, 460 U.S. at 483 n.16 ("By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court.").

Because DiPiero's fourth and fifth defenses are not proper affirmative defenses under Rule 8, and because the *Rooker-Feldman* doctrine would bar the court from considering them if they were, the fourth and fifth defenses will be stricken.

### iii. Jury Demand

Finally, DiPiero's jury demand will be stricken as well. A debtor has no right to a trial by jury on a claim that a debt he owes is non-dischargeable. *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1505 (7th Cir. 1991). The court of appeals reached this conclusion in *Hallahan* for two reasons. First, a claim of non-dischargeability is "a type of equitable claim for which a party cannot obtain a jury trial," and the "relief sought is also equitable." *Id.* Second, by filing bankruptcy a debtor has "voluntarily submitted his case to the bankruptcy court." *Id.* In doing so, the court said, he has "lost any Seventh Amendment jury trial right he might have

asserted." *Id.* at 1506.

*Hallahan* is still good law in this circuit. *See, e.g., Tomb v. Evans*, No. 12 C 2609, 2012 WL 3023414, at *4 (N.D. Ill. July 24, 2012) (citing *Hallahan* and holding that a proceeding under section 523(a) is a core proceeding to which "the Seventh Amendment jury trial right does not attach"). Other courts of appeals have reached the same conclusion. *See, e.g., United States v. Stanley*, 595 F. App'x 314, 320-21 (5th Cir. 2014); *American Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1124 (9th Cir. 1997); *Logo v. McLaren (In re McLaren)*, 3 F.3d 958, 960-61 (6th Cir. 1993).

Because DiPiero has no right to a jury trial on Pausch's section 523(a)(6) claim, his jury demand will be stricken.

### 4. Conclusion

For these reasons, the motion of plaintiff Lauren I. Pausch to strike the answer, certain affirmative defenses, and jury demand of defendant Todd DiPiero is granted in part and denied in part. As to the answer itself, the motion is denied. As to the affirmative defenses and jury demand, the motion is granted. The first, fourth, and fifth affirmative defenses, along with the jury demand, are stricken. A separate order will be entered consistent with this opinion.

Dated: July 5, 2016

_____
A. Benjamin Goldgar
United States Bankruptcy Judge